UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cr-00232-SRC |
| | ) | |
| JOHN L. HAMPTON, II, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum and Order**

John L. Hampton, II, proceeds pro se with standby counsel.  He has six pending motions before the Court:  (1) Motion to Dismiss Indictment, doc. 64, (2) Amended Motion to Dismiss Indictment, doc. 95, (3) Motion to Suppress Evidence, doc. 65, (4) Motion to Dismiss Indictment with Prejudice for Lack of a Valid Charging Instrument and Mandatory Speedy Trial Act Dismissal, doc. 154, (5) Motion to Dismiss the Indictment as Applied for Lack of a Constitutionally Sufficient Criminal Case, doc. 156, and (6) Motion to Dismiss Indictment and Mandatory Speedy Trial Act Dismissal, doc. 158.  For the reasons explained below, the Court denies Hampton's motions and adopts Judge Holmes's Report and Recommendation.

**I.    Procedural history**

The Court referred Hampton's motions to United States Magistrate Judge Rodney H. Holmes pursuant to 28 U.S.C. § 636(b).  *See* doc. 2.  On April 6, 2026, Judge Holmes issued a Report and Recommendation ("R&R"), recommending that the Court deny all of Hampton's motions.  Doc. 180 at 20 (The Court cites to page numbers as assigned by CM/ECF.).  Judge Holmes also recommended that the Court deny the United States' Motion to Strike Defendant's Motions to Dismiss, doc. 166, as moot.  Doc. 180 at 20.  Hampton timely filed objections to the

R&R, doc. 184, the United States responded to Hampton's objection, doc. 187, and Hampton

filed a reply, doc. 190.

## II.    Standard

When a party objects to a magistrate judge's R&R, the district judge must conduct a de

novo review of the portions of the report, findings, or recommendations to which the party

objects.  *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of

those portions of the report or specified proposed findings or recommendations to which

objection is made."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28

U.S.C. § 636(b)(1)).  In making its de novo determination, the Court reviewed the record related

to Hampton's motions.

## III.    Statement of facts

For convenience, the Court includes the findings of fact from the R&R with supporting

citations.  The Court has noted any modifications, based on its de novo review, below.

> On February 19, 2025, at approximately 11:00 p.m., Detective Jacob Figge and Officer Chase Braden of the St. Charles County Police Department were conducting routine patrol at the Rivers Edge Convenience Store and Gas Station. [Doc. 147, Evid. Hr'g Tr. at 4:8–10:6, 46:12–47:13; United States Ex. 6 at 0:00– 0:15 (showing that the traffic stop occurred at about 11:00 p.m.).]  The store is in West Alton, Missouri, within St. Charles County, Eastern District of Missouri. [Doc. 147, Evid. Hr'g Tr. at 4:21–6:2; 18 U.S.C. §105].  The store's location is considered a high crime area with significant drug activity in the parking lot.  [Doc. 147, Evid. Hr'g Tr. at 5:20–6:12, 47:6–47:10.]

> On the night in question, Detective Figge and Officer Braden were patrolling in an unmarked police issued Ford F-150 pick-up truck. [*Id.* at 11:12–11:21.]  They were running random record checks of license plates of vehicles that were parked at the store. [*Id.* at 47:14–48:9, 66:6–66:16.]  The record checks revealed that one of the vehicles, a black truck, was registered to John L. Hampton, II. [*Id.* at 10:7–10:20, 47:14–48:9.]  The record check provided basic pedigree information of Mr. Hampton, and indicated that his [] driver's license was revoked.  [*Id.* at 10:21– 11:2.]

The Officers observed a white male consistent with the information they received enter the driver's seat of the vehicle and exit the parking lot. [*Id.* at 10:23–11:5, 48:10–49:14.]  The driver of the vehicle did not make a full and complete stop at the stop sign as he reached the intersection. [*Id.*]  Detective Figge and Officer Braden initiated a traffic stop of the vehicle. [*Id.* at 10:5–10:8, 49:15–49:20.]. Detective Figge's vehicle was not equipped with a dash cam. [*Id.* at 11:12–12:2.]. Both Officers wore body cameras, however, and Detective Figge's body cam was activated by dispatch when he called in the traffic stop. [*Id.* at 12:3–12:25, 14:12–15:5, 31:5–32:13; *see* United States Ex. 6 at 00:00–00:40.]

Detective Figge approached Mr. Hampton's vehicle and asked for identification. [Doc. 147, Evid. Hr'g Tr. at 15:6–16:8; United States Ex. 6 at 00:00–00:20.]  Mr. Hampton provided a passport. [Doc. 147, Evid. Hr'g Tr. at 16:9–16:10.]  Both Officers testified that Mr. Hampton appeared extremely nervous, more nervous than they would expect for a simple moving violation. [*Id.* at 16:14–16:23, 50:16–51:17.]  Detective Figge returned to his vehicle with Mr. Hampton's passport to run further record checks. [*Id.* at 16:24–17:2; United States Ex. 6 at 00:00–2:20.]  Officer Braden stayed with Mr. Hampton, who remained seated in the driver's seat of his pick-up truck. [Doc. 147, Evid. Hr'g Tr. at 17:3–17:11.]

Detective Figge confirmed the identity of Mr. Hampton, and that his driver's license was indeed revoked. [*Id.* at 17:12–17:19.]  Detective Figge returned to the vehicle and asked Mr. Hampton to exit the vehicle. [*Id.* at 17:20–17:25; United States Ex. 6 at 2:20–2:40.]  Mr. Hampton initially appeared hesitant, but eventually complied and exited the vehicle. [Doc. 147, Evid. Hr'g Tr. at 18:1–18:3; United States Ex. 6 at 2:40–3:25.]  The body cam video confirms that neither Detective Figge nor Officer Braden drew their firearms to force Mr. Hampton to exit his vehicle. [*See generally* United States Exs. 6–8.]

Detective Figge asked Mr. Hampton if he had any weapons on his person, and Mr. Hampton indicated that he had a pocketknife. [Doc. 147, Evid. Hr'g Tr. at 18:4–18:8; United States Ex. 6 at 2:58–3:02.]  Detective Figge allowed Mr. Hampton to remove the weapon himself, and place it in his vehicle. [Doc. 147, Evid. Hr'g Tr. at 18:9–18:17; United States Ex. 6 at 3:02–3:25.]  At this point Mr. Hampton was not placed in handcuffs, and was in fact smoking a cigarette and placing phone calls from the side of the road. [Doc. 147, Evid. Hr'g Tr. at 18:18–18:25; *see* United States Ex. 6 at 2:58–9:00.]  Mr. Hampton was taken to the rear of his vehicle, and Detective Figge asked if there was anything else in his pockets. [Doc. 147, Evid. Hr'g Tr. at 19:4–19:11; United States Ex. 6 at 3:00–3:20.]  Mr. Hampton stated that he did not know what else was in his pockets, and so the Officers asked for consent to search Mr. Hampton's person. [Doc. 147, Evid. Hr'g Tr. at 19:12–19:22; United States Ex. 6 at 3:20–4:25.]  Mr. Hampton granted consent, and proceeded to remove items from his person himself. [Doc. 147, Evid. Hr'g Tr. at 19:23–20:4, 21:25–22:7; United States Ex. 6 at 4:20–5:30.]  He did not remove any contraband from his person. [Doc. 147, Evid. Hr'g Tr. at 22:8–22:10.]

3

Detective Figge asked Mr. Hampton if there were any weapons in the vehicle. [*Id.* at 22:11–22:13; United States Ex. 6 at 4:12–5:37.] Mr. Hampton stated that there was a pistol in the vehicle. [Doc. 147, Evid. Hr'g Tr. at 22:11–22:14; United States Ex. 6 at 4:12–5:58.] Detective Figge asked Mr. Hampton for consent to search the vehicle. [Doc. 147, Evid. Hr'g Tr. at 22:17; United States Ex. 6 at 5:58–6:02.] Mr. Hampton did not give consent to search the vehicle, but did give Detective Figge permission to secure the pistol. [Doc. 147, Evid. Hr'g Tr. at 22:18–22:20; United States Ex. 6 at 6:00–8:55.] Mr. Hampton stated that the pistol was located between the driver's seat and the center console. [Doc. 147, Evid. Hr'g Tr. at 22:21–22:24.]

While Detective Figge retrieved the firearm, Officer Braden asked Mr. Hampton if he was a convicted felon. [United States Ex. 6 at 8:55–9:30; United States Ex. 8 at 5:14–5:50.] Mr. Hampton replied that he was not. [United States Ex. 8, at 5:14–5:50.] Officer Braden told Mr. Hampton that it was extremely cold, and he promised that the Officers were not going to drive 45 minutes to take him to jail unless they found a dead body in the vehicle. [*Id.* at 6:00–6:15.]

Detective Figge secured the pistol and performed a record check of the firearm. [Doc. 147, Evid. Hr'g Tr. at 23:3–23:6; United States Ex. 6 at 9:30–12:30.] The record check indicated that the pistol was reported stolen. [Doc. 147, Evid. Hr'g Tr. at 23:7–23:8.] As a result of this information Detective Figge handcuffed Mr. Hampton, and read him his *Miranda* warnings. [*Id.* at 23:9–23:14; United States Ex. 6 at 12:30–13:07.] Because of the extremely cold weather Mr. Hampton was placed in the officer's vehicle. [Doc. 147, Evid. Hr'g Tr. at 24:10–24:12, 54:21–55:9; United States Ex. 6 at 13:07–13:50.] While seated in the police vehicle, Mr. Hampton told Detective Figge that he did not believe the firearm was stolen when he took possession of it, and that he kept the firearm for protection. [Doc. 147, Evid. Hr'g Tr. at 24:13–24:22; United States Ex. 6 at 13:50–16:00; United States Ex. 8 at 9:30–14:38.]

Officer Braden stated that given the fact that a stolen firearm was in Mr. Hampton's vehicle, he made the decision to conduct a probable cause search of the vehicle. [Doc. 147, Evid. Hr'g Tr. at 56:8–56:15.] Officer Braden located a white powdery substance that was later confirmed to be methamphetamine. [*Id.* at 56:16–57:20; United States Ex. 8 at 14:30–17:37.] After being confronted with the methamphetamine in the vehicle, Mr. Hampton told the officers he also had psilocybin mushrooms in the fifth pocket of his jeans. [Doc. 147, Evid. Hr'g Tr. at 23:23–24:9; United States Ex. 8 at 17:37–25:00.]

As a result of the traffic stop and investigation, it was determined that in addition to driving with a revoked license, Mr. Hampton was in possession of a stolen firearm, methamphetamine, and illegal mushrooms. [Doc. 147; United States Exs. 6–8.] True to their word, however, Detective Figge and Officer Braden did not arrest Mr. Hampton and allowed him to drive away from the scene. [Doc. 147, Evid. Hr'g Tr. at 25:6–25:8, 56:2–56:7, 59:7–59:10; United States Ex. 6 at 28:40–32:42; United States Ex. 8 at 24:55–29:07.]

4

Both Detective Figge and Officer Braden testified that the traffic stop occurred on February 19, 2025. [Doc. 147, Evid. Hr'g Tr. at 9:23–9:25, 26:3–26:5, 61:8–61:11, 64:13–64:14.]  Officer Braden erroneously wrote the date of the traffic stop as February 20, 2025, in his police report.  [*Id.* at 26:6–26:8, 64:13–64:17.]  The Indictment states the offense conduct took place "[o]n or about February 20, 2025." [Doc. 2 at 1.]

Doc. 180 at 2–5.  Having reviewed the record, the Court also agrees with Judge Holmes that "[a] careful review of the body cam videos from both Detective Figge and Officer Braden shows an extremely cordial interaction" throughout the entire incident.  Doc. 180 at 3 n.1.

## IV.    Discussion

Hampton first objects to Judge Holmes's recommendation to deny his Motion to Suppress, doc. 65, because "[t]o justify probable cause for making a traffic stop there must be a traffic citation."  Doc. 184 at 2.  The Fourth Amendment prohibits "unreasonable searches and seizures."  U.S. Const. amend IV.  "For a traffic stop to be constitutional under the Fourth Amendment, it 'must be supported by reasonable suspicion or probable cause.'"  *United States v. Hanel*, 993 F.3d 540, 543 (8th Cir. 2021) (citing *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008)).

"Any traffic *violation*, however minor, provides probable cause for a traffic stop."  *Id.* (emphasis added) (citing *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc)); *see United States v. Parks*, 353 F. App'x 78, 78–79 (8th Cir. 2009) (finding stop was lawful where officer issued warning about driving without a rear license plate light, but did not issue a citation); *see also United States v. Wright*, 512 F.3d 466, 471–72 (8th Cir. 2008) (finding sufficient evidence to support the district court's finding of a traffic violation based on the testimony of the officers who observed the violation).  Both Detective Figge and Officer Braden testified that they observed a white male—consistent with the information received from the

5

records check about Hampton—commit a traffic violation. Doc. 147, Evid. Hr'g Tr. at 10:12–11:11, 48:3–49:20. Judge Holmes found Detective Figge and Officer Braden's testimony credible. Doc. 180 at 8. Having reviewed the record, the Court agrees with Judge Holmes's determination. Judge Holmes therefore correctly found that "[t]his traffic violation created probable cause for the Officers to conduct a traffic stop of Mr. Hampton's vehicle." *Id.* Hampton's recitation of the law is incorrect, and the Court overrules his objection. Doc. 184 at 2.

Hampton next appears to object to Judge Holmes's recommendation to deny his Motion to Dismiss the Indictment, doc. 156, because "[t]here is absolutely no [c]riminal [h]istory in the same name as the named defendant JOHN L. HAMPTON II." Doc. 184 at 2. He states that "the two separate [c]riminal [h]istory's [sic] provided in the discovery are not in the defendants [sic] name." *Id.* And that "[t]hey are a product of mis-identification by the State of Illinois and are linked to multiple different peoples [sic] fingerprints[,] pictures[,] and identification numbers." *Id.* In his reply, Hampton clarifies that "if there is no history of criminal convictions in the same name as the charged defendant[,] [t]he Defendant can not [sic] be charged as a felon in possession of a firearm because the defendant is not a felon." Doc. 190 at 2. At trial, the United States will have to prove to a jury beyond a reasonable doubt that Hampton had a prior felony conviction. *See United States v. Tate*, 633 F.3d 624, 629 (8th Cir. 2011) (stating the elements of 18 U.S.C. § 922(g)(1)).

In his Motion to Dismiss the Indictment, Hampton argued that the felon-in-possession-of-a-firearm statute is unconstitutional as applied. Doc. 156. Judge Holmes correctly held that Eighth Circuit precedent foreclosed Hampton's arguments. *See* doc. 180 at 15–16 (discussing

*United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024)).  The Court therefore overrules Hampton's objection.  Doc. 184 at 2.

Hampton's remaining objections pertain to Judge Holmes's recommendation to deny Hampton's motions to dismiss the indictment.  Doc. 184 at 2–3; doc. 190 at 3.  Hampton alleges that no video evidence exists of "any alledged [sic] traffic stop made by members of the St. Charles County Police Dep[artment] on 02-20-2025[.]"  Doc. 184 at 2.  He also alleges that Officer "Chase Braden on multiple dates being more than one report/record from more than one date stating that the alledged [sic] offense occurred on 02-20-2025[.]"  *Id.* at 3.  The United States, Hampton argues, "is attempting to convict [him] for a completely different uncharged offense without a valid charging instrument."  *Id.*

But as Judge Holmes noted, "[t]he time and date stamp displayed on the body cam video in this case indicates the traffic stop occurred on February 19, 2025, at approximately 11:00 p.m."  Doc. 180 at 17; *see* United States Exs. 6–8 (displaying the time and date stamp on the body-cam videos).  "Detective Figge concluded the traffic stop on the same date, and allowed Mr. Hampton to drive away at approximately 11:31 p.m."  Doc. 180 at 17.  "Officer Braden testified that he incorrectly wrote the date of the traffic stop as February 20, 2025, in his police report."  *Id.*

The indictment in this case states "[t]he Grand Jury charges that:  [o]n or about February 20, 2025, in St. Charles County, within the Eastern District of Missouri . . .," doc. 2 at 1, and Judge Holmes correctly held that the "use of 'on or about' in an indictment relieves the [United States] of proving that the crime charged occurred on a specific date, so long as it occurred within a reasonable time of the date specified."  Doc. 180 at 17 (citing *United States v. Webster*, 797 F.3d 531, 534 (8th Cir. 2015)).

Judge Holmes also noted that "even if the proof at trial does not show that the crime occurred within a reasonable time of the date specified in the indictment, a variance between the date in the pleading and the proof is not fatal if the proof shows that the acts charged were committed within the period of the statute of limitations and prior to the date of the indictment, as long as the date is not a material element of the offense, and the defendant is not prejudiced." *Id.* (citing *Webster*, 797 F.3d at 534).  Judge Holmes correctly explained that "the date of the offense is not a material element of 18 U.S.C. § 922(g)(1)," and that a variance of a "matter of hours" didn't cause any prejudice to Hampton.  *Id.* at 18; *see United States v. Stuckey*, 220 F.3d 976, 982 (8th Cir. 2000) ("The date of the offense is not a material element of a firearm possession charge under 18 U.S.C. § 922(g)(1).");  *see also United States v. Reece*, 547 F.2d 432, 435 (8th Cir. 1977) (holding that a one-year variance between indictment and proof at trial was harmless and did not affect defendant's substantial rights, where defendant did not argue that he was prevented from properly presenting his defense).

Because the indictment "fully and fairly" apprised Hampton of the "allegations against which he must defend, prejudice is absent and any variance is harmless error." *Webster*, 797 F.3d at 534.  The Court therefore overrules Hampton's remaining objections.  Doc. 184 at 2–3; doc. 190 at 3.

The Court also notes that Hampton makes several accusations of "judicial misconduct and negligence" against Judge Holmes, because—according to Hampton—"Judge Holmes . . . [is] fully aware that the defendant is completely innocent of the charged offense." Doc. 184 at 4; *see also id.* 4–6.  The Court finds Hampton's accusations meritless.  At trial, the United States must prove to a jury that Hampton is guilty of the charged offense beyond a

8

reasonable doubt.  But to the extent that some of his accusations restate his objections to Judge Holmes's R&R, the Court overrules them for the reasons stated above.

Finally, Hampton separately objects to the Court's denial of several pretrial motions as untimely, doc. 198.  Doc. 202.  The Court construes Hampton's objection as a motion for reconsideration of the Court's Order.  Doc. 198.  While "[t]he Eighth Circuit has not decided whether the 'civil standard applies to motions for reconsideration raised in criminal cases outside of the suppression context,' [it] has recognized that other Circuits apply the civil standard in criminal cases."  *United States v. Mahasin*, No. 4:02-cr-00004-SEP, 2025 WL 561232, at *1 (E.D. Mo. Feb. 20, 2025) (citing *United States v. Luger*, 837 F.3d 870, 875–76 (8th Cir. 2016)).  "Without any authority providing a different standard, the Court will apply the civil standard for reconsideration to" Hampton's motion.  *Id.*  "A district court has wide discretion over whether to grant a motion for reconsideration of a prior order."  *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019).  "An abuse of discretion occurs where the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions."  *Garang v. City of Ames*, 2 F.4th 1115, 1120–121 (8th Cir. 2021) (citation modified).

As to his motions to dismiss the indictment, docs. 194, 195, the Court stands by its previous determination, doc. 198.  As to his motion to permit his presentation of a complete defense and preclude administrative truncation of his criminal adjudication, doc. 193, to the extent that Hampton challenges a pretrial ruling on a motion covered by Federal Rule of Criminal Procedure 12(b)(3), the Court stands by its previous determination.  Doc. 198.  To the extent that Hampton seeks to present a complete defense at trial, the Court denies his motion as premature.  The Court again reminds Hampton that the United States will have to prove beyond a reasonable doubt each element of the charged offense to a jury.  *See Tate*, 633 F.3d at 629

(stating the elements of 18 U.S.C. § 922(g)(1)).  And at trial, Hampton will have "a meaningful opportunity to present a complete defense."  *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993).

V.        **Conclusion**

Accordingly, the Court (1) overrules Hampton's objections, doc. 184, (2) sustains, adopts, and incorporates Judge Holmes's [180] R&R, and (3) denies Hampton's pending [64] [65] [95] [154] [156] [158] [202] motions.  The Court also denies as moot the United States' [166] Motion to Strike Defendant's Motions to Dismiss.

So ordered this 3rd day of June 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE